736 S.E.2d 360

**Jonathan Ray MARCUS, Defendant Below, Petitioner**

v.

**Lori Ann STAUBS, as mother and next friend of Jessica Lynn Staubs, and as Administratrix of the Estate of Samantha Nichole Dawn Staubs, deceased, Plaintiff Below, Respondent.**

No. 11–0994.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2012.

Decided Nov. 15, 2012.

Concurring Opinion of Justice Benjamin Dec. 7, 2012.

Tracey A. Rohrbaugh, Esq., Julie R. Shank, Esq., Bowles Rice McDavid Graff & Love LLP, Martinsburg, WV, for Petitioner.

Charles S. Trump IV, Trump and Trump, L.C., Berkeley Springs, WV, for Respondent.

PER CURIAM:

Petitioner/defendant Jonathan "Ray" Marcus (hereinafter "petitioner") appeals the Circuit Court of Jefferson County's May 25, 2011, order granting summary judgment in favor of respondent/plaintiff Lori Ann Staubs, next friend of Jessica Lynn Staubs and Administratrix of the Estate of Samantha Nichole Dawn Staubs, on the issue of liability. The trial court found that there were no material issues of fact and concluded, as a matter of law, that: 1) petitioner was at least one percent negligent; and 2) infant Jessica Staubs was less than fifty percent negligent. Petitioner argues that the trial court erred by: 1) concluding that petitioner owed a legal duty to respondent's infants; 2) concluding that certain subsequent criminal acts did not constitute "intervening causes"; 3) concluding that imposition of liability against petitioner did not constitute "social host liability"; and 4) adopting erroneous findings of fact in its order. Although we find no merit in petitioner's assigned errors,

we reverse and remand for further proceedings below inasmuch as we find that disputed issues of material fact pervade this matter making the trial court's entry of summary judgment erroneous.

## I. FACTS AND PROCEDURAL HISTORY

This case involves a single-car automobile accident which resulted in the death of 14–year-old Samantha Staubs (hereinafter "Samantha") and serious injury to her sister, 13–year-old Jessica Staubs (hereinafter "Jessica"). Both were passengers in a vehicle stolen and driven by 14–year-old Misty Johnson (hereinafter "Misty"), who was intoxicated. On December 9, 2006, Samantha and her friend, 15–year-old Kelly Mazur (hereinafter "Kelly") called 18–year-old Petitioner and requested a ride to meet Misty and Samantha's sister, Jessica, near the home of 14–year-old Adrian Villalobos (hereinafter "Adrian"), where they intended to meet others for a party. Petitioner picked up Kelly and Samantha in his truck; he was accompanied by 26–year-old Steven Woodward (hereinafter "Woodward") and his younger brother, with whom he had just been to a movie.

After picking up Kelly and Samantha, petitioner proceeded to drive across the West Virginia/Virginia line to a convenience store called "Sweet Springs." Both petitioner and Woodward testified that they had previously planned to visit the convenience store so Woodward could purchase alcohol. However, Woodward testified that petitioner asked him if he would also buy alcohol for the girls and that he refused. Petitioner denies this. Kelly, however, testified that she and Samantha—and not petitioner—requested that Woodward buy them alcohol and that he agreed, telling petitioner to drive to Sweet Springs for that purpose. Kelly testified that petitioner was not involved in the conversation about obtaining alcohol, said very little during the trip, and that he "may" have been on his cell phone at some point. Peti-

tioner maintains that he was neither involved in nor overheard any such conversation—despite all five of them being in the small extended cab of his truck. Rather, petitioner testified that he went to Sweet Springs so Woodward could buy alcohol for himself, as had been their plan all day, and that the girls simply "begged" to go with them.

Upon arrival at Sweet Springs, Samantha gave Woodward ten to fifteen dollars. Woodward testified that the money was for cigarettes, having refused to buy the girls alcohol. Kelly testified that the money was for "Hurricane" brand malt liquor. Woodward alone went into the store and purchased four, forty-ounce containers of "Hurricane" brand malt liquor. It is undisputed that petitioner did not exit the vehicle or purchase any alcohol.

After the alcohol and cigarettes were purchased, petitioner drove Kelly and Samantha to meet Misty and Jessica near Adrian's house. Woodward and petitioner maintain that upon arrival at their destination and upon exiting the vehicle, unbeknownst to them, the girls stole the alcohol Woodward had purchased for himself. Kelly, Jessica, and Adrian dispute this contention and testified that Woodward gave the bag containing the alcohol to them.[1]

The girls then retreated to Adrian's house, where they began drinking the alcohol, as well as vodka from Adrian's house. When Adrian's parents returned home, they indicated that the girls could not stay the night. Misty and Samantha began calling friends to find someone to give them a ride to another location. Kelly believes that Samantha "probably would have called" petitioner for a ride. Woodward testified that the following morning, petitioner "or someone" called him to advise of the accident and told him that the girls called petitioner for a ride and he refused to pick them up. Finding no one available to pick them up, Misty and Samantha left Adrian's house stating they were going to steal a car. They returned minutes later with a truck they stole from neighbor

1. The testimony among these witnesses is inconsistent on whether Woodward handed the bag of alcohol to one of them or sat the bag down on the ground as well as whether he retrieved it from the cab or bed of the truck. Misty simply testified that Samantha and Kelly had the alcohol "with them."

Mack Jenkins and retrieved Kelly and Jessica. Minutes later, with Misty at the wheel and Samantha an unsecured front passenger, the vehicle hit an embankment. Samantha was killed; Jessica sustained a head injury. Thereafter, Woodward was charged with eight counts of contributing to the delinquency of a minor and pled guilty to one count. Petitioner was not charged with any crime.

Respondent Lori Ann Staubs filed suit as the mother and next friend of Jessica Staubs and as Administratrix of the Estate of Samantha Staubs against petitioner and others.[2] Respondent alleged that petitioner and Woodward negligently "provided" alcohol to the minors. After default was entered against petitioner, Nationwide Mutual Fire Insurance Company (hereinafter "Nationwide," which provided a homeowners' insurance policy to petitioner's father, with whom he resided) appeared and defended on petitioner's behalf. In late 2010, Nationwide and respondent agreed that the default against petitioner would be set aside in exchange for an agreement which made certain provisions for settlement depending on the outcome of a liability determination as to petitioner. The settlement agreement provided as follows:

> "[I]f, after trial and verdict on the question of liability ... judgment is for Marcus, then Nationwide will pay to Staubs ... $50,000.00.... If, after trial and verdict on the question of liability ... judgment is for Staubs, then Nationwide will pay to Staubs ... $125,000.00."

2. Respondent also named Misty, Woodward, Leroy Ziegenfuss (Misty's father), Mack Jenkins (owner of the stolen truck who was subsequently dismissed), and State Farm Mutual Automobile Insurance Company in her complaint.

3. However, following oral argument, the trial court made the following statement:
I hope you both weren't overly ambitious people look [sic] at things through rose colored glass, I assume there is no evidentiary issue in the case that looks the same to both sides because when you argue it you really argue different world views of this close little universe of facts which by the time you argue it really looks like a different set of facts. But I think when juries look at cases they do reach conclusions and make presumptions, I mean, they're allowed to put two and two together to equal four, cause and effect, things of that

(emphasis added). In exchange for payment of the sums indicated, respondent agreed to release petitioner.

However, despite the language of the agreement contemplating a trial and verdict, petitioner moved for summary judgment, prompting a response and cross-motion for summary judgment by respondent. Significantly, petitioner stated in his motion that while he believed the "material" facts were undisputed, he "[did] not agree with all of the facts set forth [t]herein. However, *assuming these facts are true, the Complaint against him still should be dismissed.*" (emphasis added). Respondent likewise took the position that the material facts were undisputed.

Approximately three weeks later, the trial court entered an order denying petitioner's motion for summary judgment and granting respondent's cross-motion for summary judgment. The order states "[t]he Court finds that the facts of this tragic case are not in dispute." [3] The trial court then made the following findings: (1) that petitioner had a duty to both plaintiffs to "obey the law," and that through his role in obtaining the alcohol, he had violated two statutes—W. Va.Code § 11–16–19(c) (Repl.Vol.2010) and W. Va. Code § 49–7–7 (Repl.Vol.2009);[4] (2) that by virtue of his violation of these statutes, he was *prima facie* negligent; (3) that by refusing to pick the girls up later in the evening at their request, he was guilty of common law negligence; (4) that his negligence was a proximate cause of the accident; (5) that

nature, which is maybe different than a cold computation of known admitted facts.

4. W. Va.Code § 11–16–19(c) prohibits a person from "knowingly buy[ing] for, giv[ing] to or furnish[ing] nonintoxicating beer to anyone under the age of twenty-one" and is a misdemeanor. The term "nonintoxicating" is used to distinguish beer and malt beverages from "liquor" which has a greater percentage of alcohol by volume, but does not constitute a legal determination. *See Payne v. Kinder,* 147 W.Va. 352, 127 S.E.2d 726 (1962) (holding that whether beer is in fact intoxicating is a factual question that cannot be determined by legislative fiat).

W.Va.Code § 49–7–7 prohibits a person from "contribut[ing] to, encourag[ing] or tend[ing] to cause the delinquency or neglect of any child" and is also a misdemeanor.

Misty's actions in stealing the vehicle, driving without a license, and driving intoxicated were not intervening causes; (6) that by imposing liability on petitioner, the court was not imposing "social host" liability, as argued by petitioner; (7) that Jessica Staubs, as a 13–year–old, was not guilty of contributory negligence;[5] and (8) as a result of the foregoing, petitioner was liable to respondent. It is from this finding that petitioner appeals.

## II. STANDARD OF REVIEW

It is well-established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Moreover, with respect to the propriety of an award of summary judgment, this Court has held that

" 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. Pt. 2, *Id.* This Court has likewise cautioned that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *Id.* It is with these guiding principles in mind that we address petitioner's assignments of error.

## III. DISCUSSION

Petitioner's appeal set forth four assignments of error. Each will be addressed in turn, below.

### A. Negligence of Petitioner

Petitioner first argues that the trial court erred in finding him negligent because he did not owe a legal duty to the respondent's minors. In support of this assignment of error, petitioner makes two arguments. First, petitioner argues that the undisputed material facts do not support a finding of negligence against petitioner under any theory of liability—violation of statute or common law duty. He argues that the only "credible" evidence suggests that petitioner was an unwitting chauffeur without any knowledge of or participation in the alleged plan to purchase alcohol for the minors. Notably, petitioner cites only to the testimony of Kelly, who indicated it was she and Samantha who asked Woodward to purchase the alcohol and that petitioner was not involved in the conversation. Petitioner maintains that "[a]ll he did was drive his truck." In addition, petitioner maintains that there is no "reliable" evidence that Samantha called petitioner to pick them up later in the evening and that he refused. Secondly, as to the trial court's finding of common law negligence, petitioner argues that the principle that "a person does not have a duty to protect others from the deliberate criminal conduct of third parties," as articulated in *Miller v. Whitworth*, 193 W.Va. 262, 455 S.E.2d 821 (1995), operates to preclude a finding of duty and therefore, negligence.

In response, respondent argues that petitioner had a duty to "obey the law" and that by "providing" alcohol to the minors, he violated this duty. Respondent cites only to Woodward's testimony wherein he contends that it was petitioner who requested that he purchase the alcohol for the minors. Respondent argues that this makes petitioner knowingly complicit in the procurement of alcohol for the minors and in clear violation of W. Va.Code § 11–16–19(c) and W. Va. Code § 49–7–7. Respondent further cites exclusively to Woodward's testimony indicating that he "believe[d]" petitioner called him the next day and told him that the girls called him for a ride home and that he refused.

The trial court's order awarding summary judgment establishes the negligence of petitioner on two bases: violation of statute and common law negligence. As to the factual

---

**5.** The court made no finding whatsoever as to the contributory negligence of the decedent, Samantha Staubs.

underpinning to both means of establishing liability, the order quite clearly mirrors respondent's arguments and appears to adopt wholesale respondent's version of the facts. In particular, the trial court cites to Woodward's testimony indicating that petitioner asked him if he would "get the girls alcohol" and finds that petitioner "facilitate[d]" the purchase of alcohol for the minors. As a result, the trial court found that not only did petitioner violate the statutes noted above, but as an accomplice to Woodward's alcohol procurement, was as guilty of said procurement as Woodward, citing to the "concerted action principle" articulated in Syllabus Point 11 of *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).[6] As a result of these statutory violations, the trial court found that petitioner was *prima facie* negligent. In addition, the trial court further found that later in the evening when searching for a ride from Adrian's house, the minors "called Ray Marcus first and.... [he] refused to help." The trial court found that as a result of his actions, petitioner had a duty to exercise reasonable care to prevent the foreseeable harm which may befall respondent's minors and that, by refusing to pick them up later in the evening, he failed to exercise such care. We will address each basis of liability in view of petitioner's arguments, in turn.

## 1. Violation of Statute

■ The basis for liability arising out of violation of statute is found in W. Va.Code § 55–7–9 (Repl.Vol.2008), which provides: "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages." Moreover, this Court has held: "Violation of a statute is *prima facie*

evidence of negligence. In order to be actionable, such violation must be the proximate cause of the plaintiff's injury." Syl. Pt. 1, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990).

At the outset, it is clear that petitioner's first argument is not that the trial court performed an incorrect legal analysis to affix liability as a result of violation of statute, but rather that it adopted the "wrong" set of facts to apply to the law. Petitioner does not argue that violation of either of these statutes does not operate to establish *prima facie* negligence. Rather, petitioner simply argues that the facts utilized by the trial court to affix liability under this theory were erroneous.

■ Both petitioner's and respondent's arguments as to this portion of the first assignment of error smack of closing argument and summarily dismiss squarely contradictory evidence. Petitioner argues that there is no "credible" evidence to suggest that petitioner requested Woodward to obtain alcohol for the minors, dismissing Woodward's testimony as self-serving. Petitioner further argues that the testimony suggesting the minors called him later that evening to be picked up is speculative, at best. Respondent simply ignores Kelly's testimony indicating that petitioner was not involved in the alcohol procurement and infers that even if Kelly's testimony is true, petitioner surely overheard discussions in the truck about obtaining alcohol. Both parties seemingly dismiss petitioner and Woodward's testimony that the girls stole the alcohol Woodward purchased for himself. As is patently obvious, these arguments are not legal issues, but are factual questions that remain unresolved.[7]

These factual issues notwithstanding, we do find that ample legal authority existed to form a potential basis of liability of petition-

---

**6.** Syllabus Point 11 of *Fortner* states, in part: "[A] defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator."

**7.** A common theme throughout petitioner's argument is that, while there may be some measure of factual dispute, none of the *material* facts are disputed. The Court is mystified by petitioner's

insistence that it is immaterial to determination of liability in this matter whether petitioner was aware of the request for Woodward to purchase alcohol for the minors, whether Woodward did in fact purchase alcohol for the minors as opposed to himself, and whether petitioner refused to pick up the minors later that night—all disputed issues.

er.[8] To the extent that petitioner was determined to have "provided" alcohol to the minors or "contributed" to their delinquency, certainly W. Va.Code § 55–7–9 provides for a basis of liability. However, whether petitioner actually violated these statutes such as to establish *prima facie* evidence of negligence, is an issue for the finder of fact:

> " '[T]he determination as to whether there was in fact a [statutory] violation and whether the violation was the proximate cause of the injury is within the province of the jury.' Syllabus Point 3, *Simmons v. City of Bluefield* [159] W.Va. [451], 225 S.E.2d 202, 88 A.L.R.3d 105 (1975)." Syllabus Point 3, in part, *Jones v. Two Rivers Ford, Inc.*, 171 W.Va. 561, 301 S.E.2d 192 (1983).

*Anderson*, 183 W.Va. at 90, 394 S.E.2d at 74 (1990). This Court finds that violation of these statutes hinges on petitioner's knowledge of the purported plan to obtain the alcohol and whether the alcohol was actually provided to the minors or stolen by them. As such, although we do not find error in the trial court's use of this principle to establish liability under the facts of this case, we find that the trial court erred in making factual determinations of disputed facts to reach the conclusion that petitioner was negligent.

## 2. Common Law Negligence

Next, petitioner asserts that in finding him guilty of common law negligence, the trial court erred by finding that petitioner had a duty to protect the minors from criminal conduct. For purposes of this argument, petitioner abandons the issue of his own conduct momentarily and contends that notwithstanding his actions, he had no duty to protect the minors from their own subsequent criminal actions and that of their friends.

As indicated above, after finding statutory violations to establish *prima facie* evidence of negligence, the trial court went further and found that petitioner was likewise negligent for failing to retrieve the minors after they called him to pick them up, presumably then obviating the subsequent criminal activity of the theft of the vehicle and Misty's reckless and intoxicated driving. To find the existence of petitioner's duty to protect against the subsequent criminal activity, the trial court cited the principle that

> " '[o]ne who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm.' Syllabus Point 2, *Robertson v. LeMaster* [171] W.Va. [607], 301 S.E.2d 563 (1983)." Syl. Pt. 10, *Price v. Halstead* [177] W.Va. [592], 355 S.E.2d 380 (1987).

Syl. Pt. 1, *Overbaugh v. McCutcheon*, 183 W.Va. 386, 396 S.E.2d 153 (1990). Petitioner counters this basis for establishing a common law duty by wielding the generality expressed in *Miller*, 193 W.Va. at 266, 455 S.E.2d at 825 (1995) that "a person does not have a duty to protect others from the deliberate criminal conduct of third parties."

We note first that the principle relied upon by petitioner is merely *dicta* as set forth in *Miller*. Secondly, and more importantly, petitioner ignores the remainder of the discussion in *Miller*, which indicates that there are exceptions to this generality for instances where (1) there is a "special relationship" which gives rise to a duty or (2) "when the

---

**8.** However, we do find that the trial court's attempt to utilize a criminal concept to buttress its contention that petitioner was in violation of W. Va.Code § 11–16–19(c) was misplaced. The trial court seemingly attempted to use the "concerted action" doctrine—a criminal concept—as further proof that petitioner violated W. Va.Code § 11–16–19(c). In particular, the trial court suggested that, as an *accomplice* to Woodward's procurement of the alcohol, petitioner was criminally liable as the sole perpetrator, Woodward. We find that there was adequate factual basis to find that petitioner violated this statute without use of this concept. There is, nevertheless, a civil counterpart to this doctrine which could be utilized to affix liability in addition to the theories advanced herein. As pertains to civil "accomplice liability," this Court has held: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Syl. Pt. 5, *Courtney v. Courtney*, 186 W.Va. 597, 413 S.E.2d 418 (1991). This is an issue to be determined by the fact-finder under the facts presented in this case.

person's affirmative actions or omissions have exposed another to a foreseeable high risk of harm from the intentional misconduct." *Id.* at 266, 455 S.E.2d at 825.

▮ Both the legal principle expressed in *Overbaugh* and the second exception from *Miller* dovetail nicely with the factual overlay of this case and help illustrate the proper management of the legal and factual issues presented. Clearly, both *Overbaugh* and *Miller* would support a legal conclusion that *to the extent* Marcus affirmatively facilitated the purchase of alcohol, creating a risk of harm to the minors, he was under a duty to exercise reasonable care to prevent reasonably foreseeable harm. However, to find Marcus negligent under this premise, two factual issues must first be resolved: first, did Marcus engage in "affirmative actions or omissions" which created an unreasonable risk of harm; and second, was such harm reasonably foreseeable? When the existence of a legal duty is predicated on disputed facts, both the court and the fact-finder must be engaged before a finding of negligence can be reached. In this instance, the trial court both made a conclusive finding of legal duty premised on disputed facts and then proceeded to resolve the facts and conclude that the duty was breached.

▮ Without question, this Court has clearly stated:

> The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law.

Syl. Pt. 5, *Aikens v. Debow,* 208 W.Va. 486, 541 S.E.2d 576 (2000). However, this Court long ago observed that "[n]egligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner, or person." *Dicken v. Liverpool Salt & Coal Co.,* 41 W.Va. 511, 23 S.E. 582 (1895). To that end, the Court has held the following:

> "The ultimate test of the existence of a duty to use care is found in the foreseeabil-

ity that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Syl. Pt. 3, *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988).

Syl. Pt. 8, *Aikens, supra.* More specifically, this Court has held that "[w]hen the facts about foreseeability as an element of duty are disputed and reasonable persons may draw different conclusions from them, two questions arise-one of law for the judge and one of fact for the jury." Syl. Pt. 11, *Strahin v. Cleavenger,* 216 W.Va. 175, 603 S.E.2d 197 (2004).

*Strahin* presents a proper roadmap for the resolution of intertwining factual and legal issues as pertains to duty. In *Strahin,* this Court was faced with a similar challenge to a lower court's determination that a legal duty existed where alleged negligence concurred with intentional, criminal acts. Appellant in that case asserted that the trial court erred by finding that a landowner had a legal duty to protect non-trespassing visitors from a foreseeable high risk of harm and by submitting the issue of foreseeability of the intentional acts to the jury. *Id.* at 180, 603 S.E.2d at 202. This Court found that existence of duty is in fact one for the court, but that in making such a determination, the court must leave room for the fact-finder to determine the issue of foreseeability: "This test [of existence of a duty] obviously involves a mix of legal and factual determinations which must be made regarding foreseeability in relation to duty in negligence cases." *Id.* at 184-85, 603 S.E.2d at 206-07. As to the division of labor to manage this mixture of issues, we held that

> a court's overall purpose in its consideration of foreseeability in conjunction with the duty owed is to discern in general terms whether the type of conduct at issue is sufficiently likely to result in the kind of harm experienced based on the evidence presented.... The jury has the more specific job of considering the likelihood or foreseeability of the injury sustained under the particular facts of the case in order to

decide whether the defendant was negligent in that his or her conduct fell within the scope of the duty defined by the court. *Id.* at 185, 603 S.E.2d at 207. In summary, we stated that "[w]hen the facts are in dispute, the court identifies the existence of the duty conditioned upon the jury's possible evidentiary finding." *Id.* at 185, 603 S.E.2d at 207.

Like petitioner herein, the appellant in *Strahin, supra,* argued that *Miller* stands for the proposition that he had no duty to protect appellee from the intentional, criminal acts of third parties. This Court noted that the facts adequately gave rise to a jury issue with regard to whether the subsequent criminal acts were reasonably foreseeable—the second exception discussed in *Miller.* This Court found that the trial court properly made the *general determination* that the relevant disputed facts were sufficient for a jury to determine whether or not it was foreseeable that the conduct of the property owner or occupier could have created an unreasonable risk of harm to the victim under the circumstances. The jury then was left with the responsibility of making the *particularized determination* of whether or not Appellant's conduct indeed fell within the scope of the legal duty identified by the court.

*Id.* at 187, 603 S.E.2d at 209 (emphasis added).

As to the instant case, we find that, like the facts in *Strahin,* while it may have been proper for the trial court to determine in *general* terms that Marcus' alleged conduct created an unreasonable risk of harm to the minors, it was within the province of the factfinder to determine, first, if Marcus engaged in such conduct, and secondly, whether such harm was, in fact, reasonably foreseeable to Marcus. Obviously, the foreseeability of this harm turns on factual issues such as Marcus' awareness of the party, intent to share the alcohol with others at the party, and the minors' desire to leave the party and attempt to procure a ride. As we held in *Strahin:* "If the court determines that disputed facts related to foreseeability, viewed in the light most favorable to the plaintiff, are sufficient to support foreseeability, resolution of the disputed facts is a jury question." Syl. Pt. 12, in part, *Id.*

■■■ Where factual issues must first be resolved to determine the proper application of the law, summary judgment is erroneous, a principle which has long been part of our jurisprudence regarding the propriety of summary judgment. As we observed at the outset of this opinion:

"'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried *and inquiry concerning the facts is not desirable to clarify the application of the law.'* Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. Pt. 2, *Painter, supra* (emphasis added). Accordingly, we find that the trial court's conclusory determination that petitioner was guilty of common law negligence, was error.

### B. Proximate Cause and Intervening Cause

Petitioner next argues that even assuming a legal duty existed and that petitioner was guilty of negligence, there were sufficient intervening criminal acts which negated proximate cause. Petitioner argues that the illegal consumption of alcohol by the minors, the theft of the vehicle, and Misty's reckless operation of the vehicle without a license and while intoxicated, all constitute intervening causes. Respondent contends that the subsequent criminal actions were merely concurrent causes which were reasonably foreseeable to petitioner, providing him no relief as to liability.

■■■ With respect to proximate cause, in general, this Court has stated:

"'To be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury.' Syl. Pt. 3, *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672 (1954)." Syllabus Point 4, *Haddox v. Suburban Lanes, Inc.,* 176 W.Va. 744, 349 S.E.2d 910 (1986).

Syl. Pt. 11, *Anderson, supra.* Where the acts of multiple tortfeasors converge, issues of concurrent negligence and intervening causation are present. This Court has explained that,

"Where two or more persons are guilty of separate acts of negligence which in point of time and place concur, and together proximately cause injury to another, they are guilty of concurrent negligence for which they may be held jointly and severally liable in an action by the injured person or, in case death results therefrom, by his personal representative." Syllabus Point 1, *Reilley v. Byard,* 146 W.Va. 292, 119 S.E.2d 650 (1961).

Syl. Pt. 14, *Id.* However, where the actions of one or more tortfeasors constitute an intervening cause, such actions operate to break the chain of causation and relieve the remainder from liability. We have defined intervening cause as follows:

" 'An intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.' Syllabus Point 16, *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963) [*modified on other grounds, State ex rel. Sutton v. Spillers,* 181 W.Va. 376, 382 S.E.2d 570 (1989) ]." Syllabus Point 1, *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8 (1982).

Syl. Pt. 3, *Wehner v. Weinstein,* 191 W.Va. 149, 444 S.E.2d 27 (1994).

 Petitioner essentially argues that criminal acts are *per se* intervening causes. In support, petitioner cites to *Yourtee v. Hubbard,* 196 W.Va. 683, 690, 474 S.E.2d 613, 620 (1996), wherein the Court stated that "[g]enerally, a willful, malicious, or criminal act breaks the chain of causation." Once again, however, petitioner relies on a generality expressed in *dicta* in *Yourtee,* with little regard for the exception discussed therein and as expressly adopted in Syllabus Point 13 of *Anderson, supra,* which states:

A tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.

Petitioner nevertheless argues that the criminal acts in this case were not reasonably foreseeable by him and therefore, break the chain of causation.

 As with the preceding issue of negligence, we find that determination of proximate cause and intervening causation were issues to be resolved by the finder of fact. This Court has held:

"The questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them." Syl. Pt. 2, *Evans v. Farmer,* 148 W.Va. 142, 133 S.E.2d 710 (1963).

Syl. Pt. 10, *Harbaugh v. Coffinbarger,* 209 W.Va. 57, 543 S.E.2d 338 (2000). In the instant case, we find that it is properly within the province of the jury, under proper legal instruction, to determine the measure of petitioner's knowledge of and participation in the procurement of the alcohol, whether the alcohol was "furnished" to the minors, and then, if so, whether given the facts and circumstances leading up to those events, the subsequent acts of the minors and their friends were reasonably foreseeable to petitioner. Therefore, we find the trial court's award of summary judgment improperly invaded the province of the fact-finder in determining whether petitioner's alleged actions were the proximate cause of the accident at issue and whether the subsequent criminal actions constituted intervening causes and, as such, was error.

### C. Social Host Liability

Petitioner argues next that, assuming petitioner "furnished" alcohol to the minors, an imposition of liability against him constitutes "social host liability," which has not been recognized in West Virginia. In response, respondent adopts the summary finding of the trial court which concluded that petitioner was not a "social host" and the minors

were not his "guests." Moreover, the trial court noted that "[t]he social host protection provided by the law presumes lawful consumption of alcohol."

 Petitioner contends that a "social host" is broadly defined as "anyone who furnishes alcoholic beverage without remuneration" and references this Court's seminal case on the issue wherein we held that "there is generally no liability on the part of the social host who gratuitously furnishes alcohol to a guest when an injury to an innocent third party occurs as a result of the guest's intoxication." Syl. Pt. 2, in part, *Overbaugh v. McCutcheon*, 183 W.Va. 386, 396 S.E.2d 153 (1990). Petitioner then turns his focus to other jurisdictions which have declined to impose social host liability when alcohol has been provided to minors. Respondent counters with an equal number of cases from jurisdictions which have imposed social host liability where alcohol was illegally provided to minors, arguing that the key to social host protection is the presumption that the alcohol is provided legally.

 We find that the facts of this case are inapposite to the concept of "social host liability." Even under petitioner's definition of a social host as one who "furnishes alcoholic beverage without remuneration," he clearly does not qualify. The undisputed testimony in this case indicates that the minors provided Woodward with ten to fifteen dollars for a purchase made at Sweet Springs— Woodward contends it was for cigarettes, Kelly testified it was for alcohol. Regardless, under these facts, neither petitioner nor Woodward provided alcohol to the minors "without remuneration" or "gratuitously" in the context of a social setting, as examined in *Overbaugh*. Accordingly, we do not find that petitioner is entitled to social host protection.[9]

## D. Propriety of Summary Judgment

Petitioner's final assignment of error serves as a "catch-all" assignment of error arguing, again, that the trial court made erroneous findings of fact in support of its award of summary judgment to respondent and improperly weighed the evidence. In particular, petitioner takes issue with the trial court's finding that he was a "known party boy." More significantly, petitioner alleges that the trial court erred in finding that Jessica, as an infant under the age of 14, was not guilty of contributory negligence and in assigning petitioner a percentage of negligence.[10] As is apparent from the foregoing discussion, given the trial court's unmistakable intrusion into the province of the factfinder and our remand on those issues, we find it unnecessary to specifically address each of these contentions.

At the outset of this opinion, we began our analysis with the oft-quoted directive of this Court that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter[.]" Syl. Pt. 3, in part, *Painter, supra.* We are not unmindful of the peculiar circumstances presented by this case wherein both parties filed cross-motions for summary judgment and urged the trial court that there simply were no disputed material facts.

---

9. In making this determination, however, this Court does not suggest that one may not appropriately qualify for such protection under a broader set of circumstances than a simple party hosted at one's dwelling. We limit our discussion in this regard to the particular circumstances presented in the instant case and leave for another day variations on who may constitute a "social host."

10. While we recognize that in order to effectuate the finding of "liability against Marcus" as required under the Settlement Agreement, the trial court felt compelled to determine that petitioner was at least one percent negligent and that Jessica was not at least fifty percent negligent, we note that the necessity of such a finding should have signaled the trial court that summary judg-

ment was clearly an inappropriate means of resolving this matter. To that end, for purposes of remand, we once again direct the trial court to Syllabus Point 10 of *Harbaugh, supra:* "'The questions of negligence, *contributory negligence*, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them.' Syl. Pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963)." (emphasis added). We observe, likewise, that given the trial court's inexplicable absence of assignment of negligence to Samantha, its attempt to bring final resolution to this matter appears to have been fatally flawed.

However, as is patently obvious from the foregoing discussion, the trial court unquestionably acted as both "judge and jury."

■ Despite the parties' misguided insistence that this case presents no disputed issues of material fact and regardless of how tempting it may have been to acquiesce to the parties' mutual agreement as such, we find that the trial court erred in failing to identify the factual disputes and awarding summary judgment. This Court has cautioned lower courts that,

> " '[a] motion by both plaintiff and defendant for summary judgment under Rule 56, R.C.P. does not constitute a determination that there is no issue of fact to be tried and if a genuine issue of material fact is involved both motions should be denied.' Syl. pt. 3, *Haga v. King Coal Chevrolet Company,* 151 W.Va. 125, 150 S.E.2d 599 (1966)." Syl. Pt. 4, *Warner v. Haught, Inc.,* 174 W.Va. 722, 329 S.E.2d 88 (1985).

Syl. Pt. 9, *Mountain Lodge Assoc. v. Crum & Forster Indemnity Co.,* 210 W.Va. 536, 558 S.E.2d 336 (2001).

To be more explicit, however, the mere fact that the parties seemingly agreed that there were no disputed issues of material fact does not constrain the trial court to accept that representation as true and enter summary judgment for one of the parties. If the parties desired to avoid a jury trial, it was within their rights to seek a bench trial of the case; however, summary judgment is not a substitute for adjudication through the bench.[11] A trial court is not permitted to "try" a case under the auspices of summary judgment for reasons that are best demonstrated by the unfortunate convolution of issues presented herein.[12]

### E. Waiver and Standing

Finally, we address counter-arguments raised by respondent all of which bear on petitioner's right to bring the instant appeal.

In her response brief, respondent raises two arguments neither of which were raised below, nor were they cross-assigned as error. Nevertheless, we address them briefly herein to clarify the proper framework for such arguments. First, respondent argues that the settlement agreement did not provide for a right of appeal to either party and that therefore, petitioner's right to appeal was effectively waived. Secondly, respondent argues that petitioner does not have "standing" to appeal inasmuch as the settlement agreement essentially terminated petitioner's "justiciable interest" in the outcome of the litigation. We find that both arguments lack merit.

First, as to whether petitioner waived the right of appeal, this issue was not raised with the trial court. Had respondent moved the trial court to enforce the settlement agreement, this issue could have been properly raised in response to any opposition advanced by petitioner or his insurer, Nationwide, to immediate payment pursuant to the settlement agreement and then reviewed by the trial court.

■ This Court has long recognized that settlement agreements are contracts and subject to enforcement like any other contract. "The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration, and *mutual assent.* There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement." Syl. Pt. 5, *Virginian Export Coal Co. v. Rowland Land Co.,* 100 W.Va. 559, 131 S.E. 253 (1926) (emphasis added). Whether or not the parties "mutually assented" to waive the right to appeal in the Settlement Agreement is a matter that requires factual development and legal analysis—none of

---

11. On remand, these factual issues must be determined via bench or jury trial. Under either scenario, it would appear appropriate for the fact-finder to assess the proportionate fault of all parties to the litigation, including both infant plaintiffs, as contemplated by W. Va.Code § 55-7-24. While such apportionment may not serve to affect damages by operation of the Settlement Agreement, such an exercise may certainly affect the critical issue of apportionment of fault, in whatever degree, to Marcus.

12. "[T]he trial judge should resist the temptation to try cases in advance on motions for summary judgment[.]" *Warner v. Haught, Inc.,* 174 W.Va. 722, 731, 329 S.E.2d 88, 97 (1985).

which occurred here at the trial court level.[13] As such, this issue is not appropriately before this Court: "[O]ur guiding precept in this regard is that the trial court must be provided with an opportunity to rule on issues properly before it and that it would be improper for this Court to rule on an issue on which the trial court had not first passed judgment." *State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009).

We are careful to note, however, that the issue of whether petitioner waived his right of appeal under the settlement agreement is distinguishable from a challenge to this Court's authority to hear a particular case. The former is an issue of contract interpretation and must be reviewed by the trial court before asking this Court to provide appellate review; the latter is a *jurisdictional* issue which this Court has the inherent authority to, and must, determine irrespective of whether the issue was raised below. *See* Syl. Pt. 2, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) (holding that even where neither party raises a jurisdictional question, the Court has the duty to determine its jurisdiction unilaterally). Although at no time did respondent assert the *jurisdictional* challenge that the summary judgment order on appeal was not a final, appealable order, we nevertheless find that jurisdiction is proper and that the order falls within the ministerial task exception to the rule of finality. *See* Syl. Pt. 3, in part, *C & O Motors, Inc. v. West Virginia Paving, Inc.*, 223 W.Va. 469, 677 S.E.2d 905 (2009)(holding that "a judgment that does not determine damages is a final appealable order when the computation of damages is mechanical and unlikely to produce a second appeal because the only remaining task is ministerial, similar to assessing costs"). By operation of the settlement agreement, upon a finding of liability, damages were fixed by agreement of the parties and therefore the computation "ministerial."

However, respondent's "standing" argument does present a jurisdictional challenge. Regardless, we find that it is likewise without merit. Respondent's standing argument is based on her contention that the settlement agreement vitiated any "justiciable claim" petitioner had in this matter. Respondent contends that because the agreement obligated Nationwide, rather than petitioner, to pay upon resolution of liability, "it was no longer possible for there ever to be any judgment against the Petitioner.... Under the agreement, no judgment would ever be entered against the Petitioner." We note that although the original intent of the settlement agreement may well have been to have a "trial and verdict" on the issue of liability and then enter into a settlement and release pursuant to the agreement without entry of a "judgment," respondent *sought and obtained* a judgment of liability through the use of summary judgment. The trial court made a very apparent judgment of liability against petitioner as clearly set forth in the order on appeal. The fact that a collateral agreement then triggered payment by Nationwide does not obviate the fact that petitioner has a judgment against him, which is the very essence of a justiciable claim.

## IV. CONCLUSION

For the reasons set forth above, this Court reverses the May 25, 2011, order of the Circuit Court of Jefferson County granting summary judgment in favor of respondent and remands this case for further proceedings consistent with this opinion.

Reversed and remanded.

Justice BENJAMIN concurs and reserves the right to file a concurring opinion.

BENJAMIN, J., concurring:

(Filed Dec. 7, 2012)

I write separately raising concern that the majority opinion, which reaches a satisfactory result in remanding this case for further development of the facts, has risen to the level of an advisory opinion. This is appar-

---

**13.** Nevertheless, we find it curious that in response to this contention petitioner failed to address, in brief or in oral argument, paragraph eleven of the Settlement Agreement which provides: "No party hereto shall be deemed to have waived any rights under this Agreement unless such waiver is in writing and signed by said party."

ent from phrases such as "these factual issues notwithstanding, we do find that ample legal authority existed to form a potential basis of liability of petitioner," and the "proper management of the legal and factual issues presented." Essentially the majority sets forth, unnecessarily, a course by which the petitioner could be deemed responsible for the wrongful death of Samantha Nichole Dawn Staubs. Prejudging foreseeability and intervening causation is simply not within the proper province of this Court at this point in the proceedings.

We have previously acknowledged that this Court is not constituted for the purpose of issuing advisory opinions.[1] While I agree with the result reached, I believe that the majority opinion goes beyond what is necessary and proper for this Court to do in deciding the issue before us. For this reason, I respectfully concur with the majority opinion.

---

1. In *Huston v. Mercedes–Benz USA, LLC*, 227 W.Va. 515, 711 S.E.2d 585 (2011), we discussed the impermissibility of rendering advisory opinions when declining to answer a question certified by the circuit court.