# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CHRISTINA VIRTUE, EXECUTRIX OF
THE ESTATE OF EVERETT REED,**
**Plaintiff Below, Petitioner**

**v.) No. 24-ICA-252**        (Cir. Ct. of Wood Cnty. Case No. CC-54-2019-C-104)

**CAMDEN-CLARK MEMORIAL HOSPITAL CORPORATION,
ROSELYN KNOPF, M.D.,
SEYOUM BAGE, M.D.,
ANNETTE HAMILTON, M.D., AND
CAMDEN-CLARK PHYSICIAN CORPORATION,**
**Defendants Below, Respondents**


## MEMORANDUM DECISION

Petitioner Christina Virtue, Executrix of the Estate of Everett Reed, appeals the April 17, 2023, order of the Circuit Court of Wood County that granted summary judgment in favor of Respondents Camden-Clark Memorial Hospital Corporation ("CCMC"), Camden-Clark Physician Corporation ("CCPC"), Roselyn Knopf, M.D., Seyoum Bage, M.D., and Annette Hamilton, M.D., for lack of causation. Petitioner also appeals the May 20, 2024, Final Order Denying Plaintiff's Rule 59(e) Motion to Amend or Alter Judgment. Respondents CCMC, CCPC, Dr. Knopf, and Dr. Hamilton filed a joint response.[1] Seyoum Bage, M.D., filed a separate response. No reply was filed.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises from a medical malpractice claim involving the medical care and treatment of Everett E. Reed, Jr. On January 29, 2017, seventy-six-year-old Mr. Reed was transferred to the emergency department at CCMC from a local skilled nursing facility in

---

[1] Petitioner is represented by David A. Sims, Esq. Respondents CCMC, CCPC, Dr. Knopf, and Dr. Hamilton are represented by Christine S. Vaglienti, Esq., Mark A. Moses, Esq., Curtiss R. Boggs, Esq., and D.C. Offutt, Jr., Esq. Respondent Seyoum Bage, M.D., is represented by Mark A. Robinson, Esq.

a "very compromised state" with breathing issues and an inability to speak. He had a past medical history of inflammatory bowel disease, type II diabetes, dementia, chronic steroid use, and steroid psychosis.

Upon admission, he was diagnosed with respiratory failure, left lower lobe pneumonia, sepsis, atrial fibrillation with rapid ventricular response, ulcerative colitis, and two stage II pressure ulcers on his coccyx and right medial gluteus. Mr. Reed was sedated, intubated, and admitted to the ICU on January 30, 2017. He was transferred to the medical-surgical unit on February 3, 2017, with a telemetry monitor in place.

Dr. Hamilton treated Mr. Reed on February 6 and 7, 2017. She restarted medication for his Crohn's disease and colitis, ordered a consultation with infectious disease specialist, Dr. Bage, and ordered the insertion of a fecal management system, among other things.

Dr. Knopf treated Mr. Reed from February 8, 2017, through February 20, 2017. During her treatment, she noted that his baseline mental state was confusion, and that his blood glucose levels were difficult to control because his family continuously fed him extra food and sugary items despite being advised to refrain from doing so. Dr. Knopf's care ended on February 20th when Mr. Reed was transferred back to the ICU due to respiratory distress with critically low hemoglobin and hematocrit levels.

Dr. Bage's treatment included his infectious disease consultation on February 6, 2017, for suspected pneumonia. Dr. Bage noted that Mr. Reed was experiencing significant leukocytosis, which he insinuated was likely attributable to Mr. Reed's receipt of steroids. Dr. Bage also followed Mr. Reed's care for a positive Clostridium difficile ("C. diff") bacterial infection result on February 7, 2017, and started him on vancomycin, then substituted a different antibiotic, Dificid, after noting his condition was not improving. The last reference to Dr. Bage's involvement in Mr. Reed's care is in the March 2, 2017, discharge summary, which noted, "Dr. Bage was concerned about urinary tract infection and started [Mr. Reed] on some broad-spectrum antibiotics. His white count went up despite this."

On March 2, 2017, after the respondent physicians' care had ended, the attending physician noted that Mr. Reed was not improving, but instead was worsening with each passing day, and that hospice may need to be considered. Palliative care was consulted, and Mr. Reed's family withdrew his care and elected to transition to comfort measures only on March 2, 2017. Mr. Reed passed away on March 5, 2017. His death certificate listed the cause of death as sepsis secondary to Clostridium difficile colitis with ulcerative colitis as a significant condition contributing to his death.

Petitioner filed her complaint on May 1, 2019, alleging that respondents were negligent in their care and treatment of Mr. Reed. Petitioner retained a critical care physician, Justin Moore, M.D., as her standard of care and causation expert. On January 6,

2023, Dr. Moore testified at deposition regarding his standard of care and causation opinions. Despite his criticisms of the care provided by respondents, Dr. Moore testified that Mr. Reed had a "50/50" chance of survival when he presented at CCMC on January 29, 2017, based on his compromised medical condition at that time, and that when his family decided to withdraw care on March 2, 2017, he still had a "50/50" chance of survival. Notably, Dr. Moore testified that Mr. Reed maintained a "50/50" chance of survival even if the alleged breaches of the standard of care at CCMC had not occurred. Specifically, he testified:

Q: Okay. All right. Last bit here with this disclosure, Doctor. The final bit here says that Dr. Moore will testify the breaches in the standard of care placed Mr. Reed's family in a position of having to choose comfort and care measures only for him. Had Mr. Reed been properly treated he likely would have recovered from the illnesses that brought him to the ED. Is that still your position – first of all, did I read that correctly, Doctor?

A: I couldn't see it, but what you said sounded about right.

Q: Yep. It's getting to be that time. There you go. That top paragraph, did I read that correctly, Doctor?

A: (Witness reviewing.) There is a degree, in my opinion, to a reasonable – to a reasonable degree of medical probability that that is a possibility, yes.

Q: When you – what percentage of possibility; what does that mean, possibility?

A: There's – even if there's five percent, that's still a five percent probability that he actually could have survived this.

Q: What probability do you place that he could have survived this had the breaches of standard of care not occurred?

A: The probability?

Q: Yeah. You said it may be five percent.

A: I would say 50/50.

On summary judgment, the circuit court found that Dr. Moore's causation opinion testimony was that Mr. Reed presented to CCMC with a fifty percent chance of survival, would have had a fifty percent chance of survival had none of the alleged breaches of the standard of care occurred, and still had a fifty percent chance of survival when the family

3

decided to withdraw care, regardless of any of the alleged breaches. Because the expert's opinion was that nothing changed regarding Mr. Reed's chance of survival during his admission at CCMC, the circuit court found that the alleged breaches in the standard of care had no effect on his outcome and, therefore, were not the proximate cause of his death. Accordingly, the circuit court held that petitioner could not establish the requisite causation of Mr. Reed's injuries or death pursuant to the West Virginia Medical Professional Liability Act, and granted summary judgment to CCMC, CCPC, Dr. Knopf, Dr. Bage, and Dr. Hamilton in an order entered April 17, 2023.

On October 6, 2023, the circuit court held a hearing on petitioner's Rule 59(e) Motion to Amend or Alter Judgment which sought reconsideration of the April 17, 2023, summary judgment order.[2] The circuit court denied the Rule 59(e) motion, finding that petitioner did not demonstrate a "clear error of law" or that granting summary judgment was an "obvious injustice" as required.

Our standard of review for an order granting summary judgment is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Id*. at 190, 451 S.E.2d at 756, syl. pt. 2 (citations omitted). Moreover, "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc*., 194 W. Va. 52, 459 S.E.2d 329 (1995).

On appeal, petitioner raises one assignment of error asserting that summary judgment was not appropriate because there was a genuine issue of material fact as to the proximate cause of Mr. Reed's death. As petitioner aptly points out, it has long been part of our jurisprudence that "[w]here factual issues must first be resolved to determine the proper application of the law, summary judgment is erroneous[.]" *Marcus v. Staubs*, 230 W. Va. 127, 138, 736 S.E.2d 360, 371 (2012). In her circuit court brief opposing summary judgment and before this Court, Petitioner argues that Dr. Hamilton and Dr. Knopf testified that Mr. Reed's cause of death was his family's decision to stop his care, but Mr. Reed's death certificate indicated that sepsis was the cause of death. Petitioner further submits that another treating physician, Robel Haile, M.D., noted in the CCMC medical record that the fecal management system ordered by Dr. Hamilton was contraindicated in patients with C.

---

[2] The Rule 59(e) motion also sought reconsideration of another order entered April 17, 2023, titled "Order Granting Defendant Camden-Clark Memorial Hospital Corporation's Motion for Summary Judgment Regarding Nursing and Ancillary Care." However, this second April 17, 2023, order was not appealed and is not before this Court.

diff and created a greater risk of infection. Next, petitioner argues that on March 2, 2017, when palliative care was chosen, Mr. Reed's white blood cell count was 20,000, indicating that he did indeed have an infection. Finally, petitioner argues that because her expert, Dr. Moore, testified that the respondents breached the standard of care when they did not properly treat Mr. Reed's infection, that created a genuine issue of material fact regarding the proximate cause of Mr. Reed's death that should have been resolved by a jury. We disagree.

The West Virginia Medical Professional Liability Act requires the following elements of proof in a successful medical negligence claim:

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
> (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3 (2003). "In a malpractice case, the plaintiff must not only prove negligence but must also show that such negligence was the proximate cause of the injury." Syl. Pt. 4, *Short v. Appalachian OH-9, Inc.*, 203 W. Va. 246, 507 S.E.2d 124 (1998). Thus, "[t]he burden is on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause of the injury." *Sexton v. Grieco*, 216 W. Va. 714, 716, 613 S.E.2d 81, 83 (2005) (quoting Syl. Pt. 2, *Walton v. Given*, 158 W. Va. 897, 215 S.E.2d 647 (1975)). "Proof that the negligence or want of professional skill was the proximate cause of the injury of which the plaintiff complains must ordinarily be by expert testimony[.]" *Hicks v. Chevy*, 178 W. Va. 118, 121, 358 S.E.2d 202, 205 (1987) (citations omitted); *see also* W. Va. Code § 55-7B-7(a).[3]

Here, petitioner's expert, Dr. Moore, provided testimony that did not support petitioner's proximate cause allegations. Instead, Dr. Moore testified that Mr. Reed's chances of survival were not affected by the respondents' alleged breaches in the standard

---

[3] Our Supreme Court of Appeals has recognized that such testimony, at minimum, must be "of such character as would warrant a reasonable inference by the jury that the injury in question was caused by the negligent act or conduct of the defendant." *Sexton* at 714, 613 S.E.2d 81, syl. pt. 2 (quoting Syl. Pt. 1, in part, *Pygman v. Helton*, 148 W. Va. 281, 134 S.E.2d 717 (1964)).

of care, as he opined those chances remained static at fifty percent from the time he was admitted, throughout Mr. Reed's hospital admission, and until his family elected to stop treatment on March 2, 2017. Despite that damaging expert testimony, petitioner argues that a jury should be permitted to determine proximate cause. However, "the law is clear that a mere possibility of causation is not sufficient to allow a reasonable juror to find causation." *Tolley v. ACF Industries*, 212 W. Va. 548, 558, 575 S.E.2d 158, 168 (2002). Dr. Moore's testimony does not establish that the alleged medical negligence proximately caused Mr. Reed's injury or death, nor could it warrant a reasonable inference of proximate cause. Petitioner cannot cure that deficiency with unsupported speculation. As our Supreme Court has held, in opposing summary judgment, one "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Dellinger v. Pediatrix Medical Group, P.C.*, 232 W. Va. 115, 122, 750 S.E.2d 668, 675 (2013) (cleaned up). On that basis, petitioner cannot make a sufficient showing on an essential element of her case, and summary judgment is warranted.

Petitioner's lone assignment of error also includes a conclusory statement that she filed a Rule 59(e) motion for relief from judgment "to permit the trial court to correct the error of law that had been committed and the manifest justice[4] that resulted, but the trial court refused." However, petitioner's brief contains no argument regarding a related alleged error by the trial court or even any additional mention of her Rule 59(e) motion. As this portion of the assignment of error was not briefed, we deem it waived. *See* Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."); *Brown v. W. Va. Univ.,* No. 23-ICA-328, 2024 WL 3582141, at *3 n.5 (W. Va. Ct. App. July 30, 2024) (memorandum decision) (declining to address assignments of error not argued in brief on appeal); W. Va. R. App. P. 10(c) (stating this Court may disregard errors not adequately supported by specific references to the appellate record).

Accordingly, we affirm the April 17, 2023, order of the Circuit Court of Wood County granting summary judgment in favor of respondents Camden-Clark Memorial Hospital Corporation, Camden-Clark Physician Corporation, Roselyn Knopf, M.D., Seyoum Bage, M.D., and Annette Hamilton, M.D., and the May 20, 2024, Final Order Denying Plaintiff's Rule 59(e) Motion to Amend or Alter Judgment.

Affirmed.

**ISSUED:** April 29, 2025

---

[4] We presume that this was a typographical error and was intended to be "injustice."

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White