507 S.E.2d 124

**Richard E. SHORT, as Administrator of the Estate of Christopher Edward Short, Richard E. Short and Cathy L. Short, Individually, Plaintiffs Below, Appellants,**

**v.**

**APPALACHIAN OH–9, INC., a Corporation, Defendant Below, Appellee.**

**No. 24898.**

Supreme Court of Appeals of West Virginia.

Submitted June 3, 1998.

Decided July 15, 1998.

Clyde A. Smith, Jr., Esq., Lynch, Mann, Smith & Mann, Beckley, West Virginia, Attorney for Appellants.

James W. Gabehart, Esq., Arden J. Cogar, Esq., Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, West Virginia, Attorneys for Appellee.

WORKMAN, Justice:

This action is before this Court upon an appeal from the final order of the Circuit Court of Summers County, West Virginia, entered on March 28, 1997. The appellants, Richard E. Short and Cathy L. Short, are the parents of Christopher Edward Short, an infant. The appellee, Appalachian OH–9, Inc., is a West Virginia corporation providing emergency medical services in the Summers County area. This action concerns Christopher's death in October 1993 and whether his death was caused by the appellee. Pursuant to the final order, the circuit court denied the appellants' motion to reconsider a summary judgment granted in favor of the appellee. The circuit court determined that summary judgment was proper because the appellants failed to obtain a physician who, as an expert witness, could link Christopher's death to the actions of the appellee.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons

stated below, this Court is of the opinion that the circuit court correctly concluded that the duties and responsibilities of the appellee, currently regulated by the West Virginia Emergency Medical Services Act, *W.Va. Code*, 16–4C–1 [1996], *et seq.*, are also subject to the provisions of the West Virginia Medical Professional Liability Act, *W.Va.Code*, 55–7B–1 [1986], *et seq.* Moreover, this Court is of the opinion that, under the circumstances of this action, the granting of a summary judgment for failure to obtain a physician as an expert witness was "protected by the parameters of sound discretion." *Parker v. Knowlton Construction Company*, 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975).

## I.

At approximately 10:30 a.m. on October 11, 1993, Christopher Edward Short, an infant, was fed by his mother, Cathy L. Short, and put down for a nap. Ms. Short then left the house to run some errands, leaving the infant in the care of his grandmother, Peggy Greer. At 1:00 p.m., Ms. Greer tried to awaken Christopher but found him unresponsive. Ms. Greer immediately telephoned for an ambulance to take the infant to Summers County Hospital and began administering CPR. Soon after, Christopher's grandfather, Ira Greer, arrived at the house and took over CPR.

At 1:15 p.m., Christopher's father, Richard E. Short, arrived and also administered CPR to Christopher. In fact, both Mr. Short and Mr. Greer had been trained in CPR. Upon learning that the ambulance, operated by the appellee, was having difficulty locating the house, Mr. Short turned the CPR back to Mr. Greer and left to find the ambulance and direct it to the premises. Shortly thereafter, Mr. Short returned with the ambulance. The ambulance personnel, employed by the appellee, included a mobile intensive care paramedic and an emergency medical technician.

1. The petition for appeal filed in this Court states: "[O]nce the ambulance personnel arrived at the scene, they immediately terminated CPR, ran some preliminary checks on the infant, concluded that the infant was beyond resuscitation,

According to the appellants, the ambulance personnel, upon arrival, examined Christopher, and determined that further attempts to resuscitate him were not warranted. Thereupon, the ambulance personnel transported Christopher to the Summers County Hospital Emergency Room, where, at 2:20 p.m., Christopher was pronounced dead on arrival by Dr. Ciriaco A. Mendoza.[1] According to Dr. Mendoza, Christopher had been dead for two to three hours. A subsequent autopsy determined that Christopher died from SIDS (sudden infant death syndrome). The appellants, however, contend that Christopher could have been resuscitated, but for the actions of the appellee.

In October 1994, the appellants instituted this action in the circuit court. The complaint alleged that the appellee was negligent (1) in not arriving at the scene in a timely fashion, (2) in not continuing resuscitation efforts until the infant was received at the hospital and (3) in failing to obtain authorization from a physician prior to terminating resuscitation efforts at the scene. Thereafter, on January 3, 1996, the circuit court entered a scheduling order, which, *inter alia*, required the appellants to disclose any expert witnesses intended to be called at trial. In response, the appellants disclosed Dr. Marc E. Kross, a physician, and Carolyn Beth Spurlock, a neonatal intensive care nurse, both of whom would have testified, according to the appellants, that CPR should not have been terminated at the scene by the appellee.

Dr. Kross, however, later refused to participate in the litigation. Consequently, by order entered on July 18, 1996, the circuit court continued the upcoming trial and allowed the appellants additional time to obtain a physician to testify. As a result, the appellants again disclosed Carolyn Beth Spurlock, and, in addition, Frank Mann and Wilma Jarrell. Although neither Mann nor Jarrell were physicians, both had knowledge and experience in emergency medical services.[2]

and took the infant to the Summers County Hospital Emergency Room."

2. The record is unclear whether the two witnesses are actually certified EMT's under the Emergency Medical Services Act.

In November 1996, the appellee filed a motion for summary judgment, alleging that the appellants had "no qualified expert medical testimony to establish that any alleged negligence was the proximate cause" of Christopher's death.[3] Although the appellants submitted a memorandum of law in reply, no affidavits or other evidentiary-related documents were ever filed in response to the motion. Following a hearing, the circuit court concluded that the appellants had "failed to meet [their] burden in responding to the motion for summary judgment." Accordingly, the circuit court entered judgment for the appellee. In so ruling, however, the circuit court indicated that it would entertain a motion to reconsider the entry of summary judgment, in the event the appellants were to "identify a proper expert witness" in the action.

The appellants subsequently filed a motion to reconsider. Rather than naming a physician, however, the motion asserted that nurse Spurlock was qualified to testify upon the issue of whether Christopher could have been resuscitated, but for the actions of the appellee. Following a hearing, the circuit court denied the motion to reconsider pursuant to the final order of March 28, 1997.

## II.

Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally,* Lugar & Silverstein, *West Virginia Rules of Civil Procedure,* p. 426–42 (Michie 1960).

■ Our standards of review concerning summary judgments are well settled. As this Court observed in syllabus point 2 of *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995):

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 2, *Burdette v. Columbia Gas Transmission Corporation,* 198 W.Va. 356, 480 S.E.2d 565 (1996); syl. pt. 2, *Pinson v. Canaan Valley Resorts, Inc.,* 196 W.Va. 436, 473 S.E.2d 151 (1996); syl. pt. 2, *Cavender v. Fouty,* 195 W.Va. 94, 464 S.E.2d 736 (1995); *Neary v. Charleston Area Medical Center,* 194 W.Va. 329, 333, 460 S.E.2d 464, 468 (1995). More specifically, in syllabus point 3 of *Williams, supra,* this Court held:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syl. pt. 3, *McGraw v. St. Joseph's Hospital,* 200 W.Va. 114, 488 S.E.2d 389 (1997); syl. pt. 3, *Farm Family Mutual Insurance Company v. Bobo,* 199 W.Va. 598, 486 S.E.2d 582 (1997); syl. pt. 4, *Evans v. Mutual Mining,* 199 W.Va. 526, 485 S.E.2d 695 (1997). Moreover, we note that, upon appeal, the entry of a summary judgment is reviewed by this Court *de novo.* Syl. pt. 1, *Koffler v. City of Huntington,* 196 W.Va. 202, 469 S.E.2d 645 (1996); syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

■ As the parties indicate, the appellee is an "emergency medical service provider" within the meaning of the West Virginia Emergency Medical Services Act. *W.Va. Code,* 16–4C–1 [1996], *et seq.* As stated in *W.Va. Code,* 16–4C–2 [1996], the purpose of

---

**3.** In the response to the petition for appeal, the appellee states: "[T]he plaintiffs were granted additional time … to locate a physician to testify on behalf of plaintiffs. Plaintiffs filed a Disclosure of Experts on July 31, 1996, which again listed Ms. Spurlock, R.N., and two EMT witnesses. Plaintiffs apparently could find no medical physician to testify in support of their case."

the Act is to ensure "the provision of adequate emergency medical services within this state for the protection of the public health, safety and welfare [.]" In order to further that purpose, entities such as the appellee are required to obtain a license from the State of West Virginia prior to providing emergency medical services to the public. *See, W.Va.Code*, 16–4C–6a [1996].

The West Virginia Emergency Medical Services Act is administered by (1) a statewide office of emergency medical services, (2) a Commissioner and (3) an emergency medical services advisory council. *W.Va.Code*, 16–4C–4 [1996]; *W.Va.Code*, 16–4C–5 [1997]. It is noteworthy that the emergency medical services advisory council is made up, in part, of a member of the West Virginia hospital association and a member of the West Virginia chapter of the American college of emergency physicians. *See, W.Va.Code*, 16–4C–5 [1997]. Pursuant to the West Virginia Emergency Medical Services Act, the definition of the term "emergency medical services" includes "responding to the medical needs of an individual to prevent the loss of life or aggravation of illness or injury." *W.Va.Code*, 16–4C–3(d) [1996].

In granting summary judgment, however, the circuit court concluded that the appellee was also subject to the provisions of the West Virginia Medical Professional Liability Act, *W.Va.Code*, 55–7B–1 [1986], *et seq.* Pursuant to that Act, certain reforms were made in the common law and statutory law of this State in order to ensure "the best medical care and facilities available" for West Virginia citizens. *W.Va.Code*, 55–7B–1 [1986]. According to the West Virginia Medical Professional Liability Act, "health care" means "any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment or confinement." *W.Va.Code*, 55–7B–2(a) [1986]. Moreover, the Act defines "health care provider" as follows:

> [A] person, partnership, corporation, facility or institution *licensed by*, or certified in, *this state* or another state, to provide

health care or professional health care services, including, *but not limited to*, a physician, osteopathic physician, hospital, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, or psychologist, or an officer, employee or agent thereof acting in the course and scope of such officer's, employee's or agent's employment.

*W.Va.Code*, 55–7B–2(c) [1986]. (emphasis added)

The appellants contend that the circuit court committed error in concluding that the appellee is covered by the West Virginia Medical Professional Liability Act, which Act includes the requirements of *W.Va.Code*, 55–7B–7 [1986], set forth below, concerning the expert witnesses of plaintiffs in medical professional liability cases. Rather, the appellants assert that the appellee is subject to the West Virginia Emergency Medical Services Act, which includes no such requirements. Moreover, according to the appellants, inasmuch as the definition of "health care provider" in *W.Va.Code*, 55–7B–2(c) [1986], of the Medical Professional Liability Act does not expressly refer to emergency medical service providers, such providers are not covered by that Act. The appellee, on the other hand, contends that both Acts apply to its duties and responsibilities and that the circuit court ruled correctly.

Clearly, a certain commonality exists between the West Virginia Emergency Medical Services Act and the West Virginia Medical Professional Liability Act. Under the former, a state license is required pursuant to *W.Va. Code*, 16–4C–6a [1996], prior to providing emergency medical services to the public. Similarly, a "health care provider" under the West Virginia Medical Professional Liability Act is one who is "licensed by, or certified in, this state." *W.Va.Code*, 55–7B–2(c) [1986]. Moreover, that statute, *W.Va.Code*, 55–7B–2(c) [1986], in defining "health care provider," contains the admonition "but not limited to" in reference to those included in the definition. Thus, the definition of "health care provider" is subject to the inclusion of emergency medical service personnel.[4]

---

4. The definition of "health care provider" set     forth in *W.Va.Code*, 55–7B–2(c) [1986], of the

In addition, as set forth above, the definition of "health care" in *W.Va.Code,* 55–7B–2(a) [1986], of the West Virginia Medical Professional Liability Act includes language to the effect that "health care" means "any act or treatment" performed or furnished upon behalf of a patient. Certainly, that language is consistent with the language of *W.Va.Code,* 16–4C–3(d) [1996], of the West Virginia Emergency Medical Services Act which suggests that "emergency medical services" includes "responding to the medical needs of an individual to prevent the loss of life or aggravation of illness or injury." As the brief filed herein by the appellee states: "Paramedics and EMT's clearly provide health care in emergency situations." Finally, the fact that, under the West Virginia Emergency Medical Services Act, the emergency medical services advisory council is made up, in part, of a member of the West Virginia hospital association and a member of the West Virginia chapter of the American college of emergency physicians further evidences a unified effort, implied in both Acts, to benefit West Virginia citizens.

Accordingly, this Court holds that emergency medical services, regulated pursuant to the West Virginia Emergency Medical Services Act, *W.Va.Code,* 16–4C–1 [1996], *et seq.,* are also subject to the provisions of the West Virginia Medical Professional Liability Act, *W.Va.Code,* 55–7B–1 [1986], *et seq.* Therefore, the ruling of the circuit court in that regard is affirmed.[5]

## IV.

■ Having determined that the West Virginia Medical Professional Liability Act applies to emergency medical service providers such as the appellee, this Court must now consider whether the entry of summary judgment constituted error. As stated above, the circuit court concluded that the appellants failed to meet their burden in responding to the motion for summary judgment. In particular, the circuit court, citing the West Virginia Medical Professional Liability Act, determined that summary judgment was proper because the appellants failed to obtain a physician who, as an expert witness, could link Christopher's death to the actions of the appellee.

The appellants are of the opinion that Christopher could have been resuscitated up to the point at which the ambulance personnel, employed by the appellee, terminated CPR. In that regard, the appellants assert that the testimony of a physician was not required because the experts of the appellants, i.e., the neonatal intensive care nurse and the two witnesses knowledgeable and

West Virginia Medical Professional Liability Act also includes the "agent" of those physicians, *etc.,* listed in that statute. In that regard, we note the definition of "medical command" found in *W.Va.Code,* 16–4C–3(m) [1996], of the West Virginia Emergency Medical Services Act, which means "the issuing of orders by a physician from a medical facility to emergency medical service personnel for the purpose of providing appropriate patient care." We, thus, recognize an issue concerning agency in the "medical command" context which would appear to further link the West Virginia Medical Professional Liability Act and the West Virginia Emergency Medical Services Act. The parties, however, have not addressed that issue, no doubt because the record herein reveals no medical command between any physician and the appellee's ambulance personnel while those personnel were at the scene on October 11, 1993. Accordingly, this Court need not definitively or preemptively settle the agency question in this opinion.

5. In another Act, i.e., the West Virginia Health Care Provider Medicaid Enhancement Act, *W.Va. Code,* 9–4C–1 [1993], *et seq.,* the terms "ambulance service provider" and "general health care provider" are separately defined. *See, W.Va. Code,* 9–4C–1(a) and (b) [1993]; *W.Va.Code,* 9–4C–4 [1994]; *W.Va.Code,* 9–4C–7(d) [1993]. Thus, the appellants assert that emergency medical service providers should not be included within the definition of "health care provider" under the West Virginia Medical Professional Liability Act.

Nevertheless, a review of the respective statutes indicates that the definition of "general health care provider" under the Medicaid Enhancement Act does not track the definition of "health care provider" found in the West Virginia Medical Professional Liability Act. Moreover, dentists, also treated separately from other general health care providers under the Medicaid Enhancement Act, *W.Va.Code,* 9–4C–3 [1994], are expressly included within the definition of "health care provider" under the West Virginia Medical Professional Liability Act. Thus, nothing in the Medicaid Enhancement Act precludes our determination that emergency medical services are subject to the provisions of the West Virginia Medical Professional Liability Act.

experienced in emergency medical services, were sufficient to raise a jury question upon the resuscitation issue, in terms of the appellee's alleged negligence. Thus, the appellants contend that the summary judgment constituted error.

On the other hand, the appellee is of the opinion that Christopher died prior to the time the appellee was initially contacted to come to the scene. In that regard, the appellee contends that, although the appellants' experts could arguably suggest that the appellee was negligent on October 11, 1993, the dispositive issue in the action is one of proximate cause, i.e., whether Christopher's death was brought about by the appellee's discontinuance of resuscitation efforts. That issue, the appellee asserts, was beyond the expertise of the appellants' witnesses. As stated in the appellee's brief filed herein: "Christopher Short's cause of death and time of death, as well as the question of whether Christopher Short could have been resuscitated, are all issues which require the testimony of a physician [.]" The appellee, indicating that the decision to require a physician was within the circuit court's discretion, thus asks this Court to affirm the summary judgment.

Importantly, under the West Virginia Medical Professional Liability Act, "the standard of care" and "proximate cause," as elements of proof required in medical professional liability actions, are treated separately. With regard to establishing the former, *W.Va.Code*, 55–7B–7 [1986], states: "The applicable standard of care and a defendant's failure to meet said standard, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court." Noting the language "if required by the court" in that statute, this Court held as follows in syllabus point 8 of *McGraw v. St. Joseph's Hospital*, *supra*, "A trial court is vested with discretion under W.Va.Code 55–7B–7 (1986) to require expert testimony in medical professional liability cases, and absent an abuse of that discretion, a trial court's decision will not be disturbed on appeal." Standard of care is also referred to in *W.Va.Code*, 55–7B–

3 [1986], of the West Virginia Medical Professional Liability Act. That latter statute, however, separates out the concept of proximate cause. As *W.Va.Code*, 55–7B–3 [1986], states:

> The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
>
> (a) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (b) Such failure was a *proximate cause* of the injury or death.

(emphasis added)

■ Upon a careful review of the record, this Court is of the opinion that the appellee is correct in its contention that the dispositive issue in this action is one of proximate cause. Whereas the expert witnesses disclosed by the appellants could presumably have testified as to the standard of care relating to the appellee's providing of emergency medical services on October 11, 1993, and the appellee's alleged failure to abide by that standard, the required element of proximate cause was another matter entirely. *See*, *Roberts v. Gale*, 149 W.Va. 166, 172, 139 S.E.2d 272, 276 (1964), observing that, in a malpractice case, the plaintiff must not only prove negligence but must also show that such negligence was the proximate cause of the injury. Specifically, the link between Christopher's medical status on October 11, 1993, and the actions of the appellee's ambulance personnel was a matter with respect to which the circuit court determined, in its discretion, that the expertise of a physician was needed and with respect to which the circuit court indicated that the witnesses disclosed by the appellants were unqualified.

■ In *Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 454 S.E.2d 87 (1994), a case involving allegations of medical malpractice, this Court held that Rule 702 of the West Virginia Rules of Evidence "is the paramount authority for determining whether or

not an expert is qualified to give an opinion." 193 W.Va. at 49, 454 S.E.2d at 94. *See also, Modi v. West Virginia Board of Medicine,* 195 W.Va. 230, 240, 465 S.E.2d 230, 240 (1995). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." *See, Sheely v. Pinion,* 200 W.Va. 472, 478, 490 S.E.2d 291, 297 (1997), stating that the essence of Rule 702 is that of assisting the fact finder's comprehension through expert testimony. In conjunction with Rule 702 is the principle expressed in syllabus point 5 of *Overton v. Fields,* 145 W.Va. 797, 117 S.E.2d 598 (1960), which states: "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syl. pt. 12, *Board of Education v. Zando, Martin & Milstead,* 182 W.Va. 597, 390 S.E.2d 796 (1990); syl. pt. 4, *Hall v. Nello Teer Company,* 157 W.Va. 582, 203 S.E.2d 145 (1974). *See also,* syl. pt. 6, *Helmick v. Potomac Edison Company,* 185 W.Va. 269, 406 S.E.2d 700, *cert. denied,* 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991).

In *Kent v. Pioneer Valley Hospital,* 930 P.2d 904 (Utah App.1997), cited by the appellee, the plaintiff alleged that the manner in which she was given an injection of medication resulted in nerve damage. The defendant hospital moved for summary judgment. In response, the plaintiff submitted the affidavit of a nurse who indicated that the plaintiff's nerve damage was caused by a deviation from the standard of care applicable to the hospital's staff. The trial court, in *Kent,* however, granted summary judgment, and the Court of Appeals of Utah affirmed. As the Court of Appeals stated:

It is within the discretion of the trial court to determine whether a particular witness qualifies as an expert and to rule on the admissibility of the expert's testimony. * * * Although a nurse may well be trained in the proper location to administer injections, we are not persuaded that a nurse is qualified to opine as to nerve damage caused by an allegedly improper injection. * * * We cannot conclude the trial court abused its discretion in determining that Ms. Schimmer was *not qualified to testify as to the proximate cause* of plaintiff's alleged nerve damage. Accordingly, we conclude plaintiff provided insufficient evidence on causation and thus failed to establish a prima facie case of negligence.

930 P.2d at 906, 907 (emphasis added). *See also, Flanagan v. Labe,* 446 Pa.Super. 107, 666 A.2d 333 (Pa.Super.1995), wherein a summary judgment granted in favor of a hospital was affirmed because the plaintiff's sole expert witness, a nurse, was held to be unqualified to state an opinion upon medical causation and diagnosis in a medical malpractice action, and *Pfeffer v. Kerr,* 693 S.W.2d 296 (Missouri Ct. of App.1985), concluding that a trial court in a personal injury action did not abuse its discretion in excluding the opinion testimony of two emergency medical technicians who indicated that an abnormally high blood pressure reading signified a stroke or possible heart attack, where it was not demonstrated that the technicians had expertise in cardiology or in any particular medical field.

■ In this action, we are of the opinion that the circuit court had the discretion to determine, as the appellee asserts, that the "cause of death and time of death, as well as the question of whether Christopher Short could have been resuscitated," were issues requiring the testimony of a physician. Thus, the circuit court acted within its discretion in determining that the nurse and the two other witnesses disclosed by the appellants were not qualified upon those matters. Accordingly, we hold that in a negligence action brought against an emergency medical service provider seeking damages with respect to the death of an infant, the circuit court has the discretion to determine whether the plaintiff is required to obtain an expert witness concerning both the standard of care applicable to the emergency medical service provider and whether the alleged breach of that standard of care proximately caused the death of the infant; moreover,

pursuant to Rule 702 of the West Virginia Rules of Evidence, the circuit court has the discretion to determine whether the expert so obtained by the plaintiff is sufficiently qualified to state opinions upon those matters before the jury.

In thus upholding the summary judgment, we further note that, although the appellants disclosed the nurse and the two other witnesses as experts to be called at trial, the appellants filed no affidavits or other evidentiary-related documents in response to the summary judgment motion. *See*, syl. pt. 3, *Williams, supra.* Moreover, the circuit court had previously continued the trial of the action in order to allow the appellants additional time to obtain a physician to testify. Even upon the entry of the summary judgment for the appellee, the circuit court stated that it would entertain a motion to reconsider, in the event the appellants were to "identify a proper expert witness" in the action. No such witness was ever identified by the appellants, and summary judgment was warranted. *See, Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991), upholding summary judgment in a medical malpractice action, where the plaintiff had been given "ample time to retain an expert" but failed to do so.

Upon all of the above, therefore, this Court is of the opinion that, under the circumstances of this action, the circuit court acted properly in granting the appellee's motion for summary judgment. Accordingly, the final order of the Circuit Court of Summers County, entered on March 28, 1997, is affirmed.

Affirmed.

McCUSKEY, J., deeming himself disqualified, did not participate in the decision in this case.

ARTHUR M. RECHT, Judge, sitting by special assignment.