STUART, Justice
(dissenting).
The main opinion reverses the summary judgment entered by the trial court in favor of Denise Dougherty, a registered nurse employed by University of Alabama at Birmingham Hospital, on the medical-malpractice claim asserted against her by Tammie L. Boyles (“Boyles”) on behalf of her minor son Colton Elijah Powell Boyles (“Eli”). I agree with the trial court that Boyles failed to identify an expert capable of testifying that Dougherty’s alleged breach of the standard of care probably caused the identified injury to Eli and that summary judgment was accordingly proper on that basis. I therefore dissent.
To prevail in a medical-malpractice case subject to the Alabama Medical Liability Act (“AMLA”), § 6-5-480 et seq. and § 6- *688 5-541 et seq., Ala.Code 1975, a plaintiff must establish 1) the appropriate standard of care, 2) that the defendant health-care provider breached that standard of care, and 3) a proximate causal connection between the health-care provider’s breach and the identified injury. Bradford v. McGee, 534 So.2d 1076, 1079 (Ala.1988), and § 6-5-548, Ala.Code 1975. In the instant case, Boyles identified Lauren Cooper, a registered nurse with experience working in a neonatal intensive-care unit, as her sole expert witness. Cooper accordingly may have been a similarly situated health-care provider qualified to give testimony regarding the applicable standard of care and whether Dougherty breached that standard. See generally Springhill Hosps., Inc. v. Critopoulos, 87 So.3d 1178, 1187-89 (Ala.2011), and § 6-5-548. However, I do not believe that Cooper’s status as a registered nurse and a similarly situated health-care provider automatically qualifies her to testify regarding causation.
In Phillips v. Alamed Co., 588 So.2d 463, 465 (Ala.1991), this Court considered a challenge to a trial court’s ruling barring a registered nurse from testifying on the issue of proximate cause because, the trial court held, testimony from a physician was necessary to establish causation due to the “complex medical issues” in that case. We stated:
“Phillips ... argues that the court erred by sustaining Alamed’s objection to testimony by Anne Bailey-Alien, a registered nurse, on the issue of proximate cause. The trial court held that testimony on the issue of proximate cause could be provided only by a physician. As a general rule, decisions as to a witness’s competency to testify as an expert on a particular subject are within the discretion of the trial court. Ward v. Dale County Farmers Co-op., 472 So.2d 978 (Ala.1985). Those decisions will not be reversed by this Court absent an abuse of discretion. Bell v. Hart, 516 So.2d 562 (Ala.1987); Byars v. Mixon, 292 Ala. 661, 299 So.2d 262 (1974).
“The question of whether Alamed’s failure to report Ms. Phillips’s complaint of shortness of breath to her physician proximately caused her death is clearly a question involving complex medical issues. Therefore, we cannot say that the trial judge abused his discretion by requiring the testimony of a physician and, implicitly, holding that a registered nurse was not competent to testify as an expert on the issue of proximate cause. Bell, supra; Byars, supra.”
Although in Phillips this Court did not expressly state the rationale for not allowing a nurse to testify regarding causation, the Court of Civil Appeals subsequently addressed that issue in Nelson v. Elba General Hospital & Nursing Home, Inc., 828 So.2d 301, 304-05 (Ala.Civ.App.2000), reversed on other grounds, 828 So.2d 308 (Ala.2001), stating:
“Although a registered nurse may be qualified to testify as to the standard of care that exists in the field of medicine applicable to registered nurses and as to whether that standard of care was breached, a registered nurse is not qualified to testify as an expert with regard to medical causation....
“There is a vast difference in the education and training of a physician and the education and training of a nurse and a vast difference in the activities they can perform. A licensed physician in the practice of medicine can
“ ‘diagnose, treat, correct, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality.’ *689 “ § 34-24-50(1), Ala.Code 1975. A registered nurse in the practice of professional nursing can perform
“ ‘any act in the care and counselling of persons or in the promotion and maintenance of health and prevention of illness and injury based upon the nursing process which includes systematic data gathering, assessment, appropriate nursing judgment and evaluation of human responses to actual or potential health problems through such services as case finding, health teaching, health counselling; and provision of care supportive to or restorative of life and well-being, and executing medical regimens including administering medications and treatments prescribed by a licensed or otherwise legally authorized physician or dentist.’
“ § 34-21-1 (3)a[, Ala.Code 1975].
“The legislature has not authorized a registered nurse to make a medical diagnosis. Rather, a registered nurse is limited to providing ‘care and counselling’ for a patient and works at the direction of a physician. For this reason, it would be a gross miscarriage of justice to enter a summary judgment in favor of Elba General when the testimony supporting its summary-judgment motion, as to the question of medical causation, has been provided by a person who is not authorized to formulate medical diagnoses.
“We find helpful several cases from other jurisdictions addressing the issue of a nurse’s testimony as to medical causation. In Flanagan v. Labe, 446 Pa.Super. 107, 666 A.2d 333 (1995), affd, 547 Pa. 254, 690 A.2d 183 (1997), the Pennsylvania Superior Court held that a registered nurse is not competent to testify as to medical causation in a malpractice case. In Short v. Appalachian OH-9, Inc., 203 W.Va. 246, 507 S.E.2d 124 (1998), the West Virginia court held that a nurse was not qualified to testify as to cause of death, time of death, or whether resuscitation was possible. Long v. Methodist Hospital of Indiana, Inc., 699 N.E.2d 1164 (Ind.App.Ct.1998), involved a claim by a heart-surgery patient who claimed to have developed a serious staph infection following the surgery. The Indiana court held that a nurse was not qualified to offer expert testimony on the question whether the hospital’s conduct caused, or increased the risk of, infection. In Kent v. Pioneer Valley Hospital, 930 P.2d 904 (Utah Ct.App.1997), an action against a health-services provider, a registered nurse was held not qualified to give an opinion as to proximate cause of nerve damage.
“Three courts in Texas have addressed the issue. In Arlington Memorial Hospital Foundation, Inc. v. Baird, 991 S.W.2d 918 (Tex.App.-Fort Worth 1999), the court held that a nursing expert who was not shown to be qualified to medically diagnose thermal burns or to be an expert on the equipment used, was precluded from testifying as to medical causation. In Pace v. Sadler, 966 S.W.2d 685 (Tex.App.-San Antonio 1998), a nurse was not qualified to medically diagnose causation of a heart condition. In Lesser v. St. Elizabeth Hospital, 807 S.W.2d 657 (Tex.App.-Beaumont 1991), the court held that a nurse might be permitted to testify about proximate causation if she is shown to have specialized experience or training that qualifies her to testify as to medical causation.”
(Footnote omitted.) See also Robinson v. Baptist Health Sys., Inc., 24 So.3d 1119, 1125 (Ala.Civ.App.2009) (affirming trial court’s ruling that nursing expert was not qualified to express an opinion regarding causation).
In the instant case, the trial court considered the evidence in the record and, noting that Eli had been born prematurely *690 and suffered from “many serious conditions,” concluded that a summary judgment was appropriate because there was “no qualified expert opinion as to causation.” The trial court had already recognized that Cooper had been identified to testify as to Dougherty’s alleged breach of the standard of care; thus, it is evident that the trial court did not consider Cooper qualified to give expert testimony regarding the cause of Eli’s injury based on the complex nature of the case. We have previously stated that it is within a trial court’s discretion to determine whether a witness is qualified to give expert testimony on a subject, see, e.g., Critopoulos, 87 So.3d at 1180, and Phillips, 588 So.2d at 465, and I do not believe the trial court exceeded its discretion in concluding that Cooper was not qualified to provide an expert opinion as to the cause of Eli’s injury. In the absence of any other expert witness to testify regarding causation, summary judgment was appropriate.[4] See University of Alabama Health Servs. Found., P.C. v. Bush, 638 So.2d 794, 802 (Ala.1994) (“To prove causation in a medical malpractice case, the plaintiff must prove, through expert medical testimony, that the alleged negligence probably caused, rather than only possibly caused, the plaintiffs injury.” (emphasis added)).
I write further to emphasize the importance of expert testimony in AMLA cases. The legislature, in enacting the AMLA, evinced its intent that expert testimony be required in AMLA cases, see, e.g., § 6-5-548, and this Court has recognized that “[u]nless ‘the cause and effect relationship between the breach of the standard of care and the subsequent complication or injury is so readily understood that a layperson can reliably determine the issue of causation,’ causation in a medical-malpractice case must be established through expert testimony.” DCH Healthcare Auth. v. Duckworth, 883 So.2d 1214, 1217-18 (Ala.2003) (citing Cain v. Howorth, 877 So.2d 566, 576 (Ala.2003)).[5] The Supreme Court of Minnesota has explained the purpose for requiring expert testimony in medical-malpractice cases as follows:
“ ‘The purpose of expert testimony is to interpret the facts and connect the facts to conduct which constitutes [medical] malpractice and causation.’ [Sorenson v. St. Paul Ramsey Med. Ctr., 457 N.W.2d 188, 192 (Minn.1990) ]. This is based on the assumption that most medical malpractice cases involve complex issues of science or technology, requiring expert testimony to assist the jury in determining liability.”
Tousignant v. St. Louis County, 615 N.W.2d 53, 58 (Minn.2000). In the instant case, Boyles states in her complaint that this case involves an “arterial stick to [Eli’s] right hand/arm [that] caused poor *691 perfusion to his hand with resulting thrombosis of the fingertips,” which allegedly resulted in auto-amputation of the same. This clearly involves matters outside the purview of a layperson, and expert testimony establishing causation is accordingly vital. Indeed, the trial court apparently determined that expert testimony from a physician was necessary under the facts of the case, and I fear that in reversing the trial court’s judgment in the absence of such testimony we are acting contrary to the will of the legislature, as expressed in the AMLA, that expert testimony be required in these cases. For these reasons, I respectfully dissent.
BOLIN and SHAW, JJ., concur.

. The main opinion concludes that "the certified medical records and [Cooper’s] testimony sufficiently established causation for the purpose of rebutting Dougherty’s motion for a summary judgment.” 143 So.3d at 687 (emphasis added). Beyond the insufficiency of Cooper's testimony to establish causation, explained supra, I would also note that there is nothing in the medical records before us that indicates that Eli’s injury was caused by a breach of the standard of care committed by Dougherty. There are some general chart notes referring to poor perfusion and thrombotic fingertips; however, there is nothing in those medical records stating what caused that condition.

. A similar requirement for expert testimony exists with regard to establishing the applicable standard of care and any breach thereof. See Anderson v. Alabama Reference Labs., 778 So.2d 806, 811 (Ala.2000) (reciting the general rule that a "plaintiff is required to produce expert medical testimony to establish the applicable standard of care and a breach of that standard of care” but noting an exception if the case involves a "want of skill or lack of care” that is readily comprehensible by a layperson).