# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No.  18-1053** (Kanawha County 18-F-278)

**Steven R. Matulis,**
**Defendant Below, Petitioner**

**FILED**

**March 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Steven R. Matulis, by counsel Isaac R. Forman and P. Gregory Haddad, appeals his conviction on one count of sexual abuse in the first degree. Respondent State of West Virginia, by counsel Zachary Aaron Viglianco, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is a gastroenterologist who practiced in Charleston, West Virginia for more than thirty years. From August of 2015 through February of 2016, petitioner performed colonoscopies and sigmoidoscopies on various female patients at Charleston Area Medical Center ("CAMC"). Thereafter, CAMC staff accused Dr. Matulis of inappropriately touching certain patients during gastroenterological procedures. Specifically, staff said they saw, among other things, Dr. Matulis inserting his finger into P.W.'s and T.W.'s vaginas and touching T.W.'s breast.[1] Both P.W. and T.W. were sedated at the time. With regard to petitioner's touching of T.W.'s breast, the evidence later indicated that, during T.W.'s sigmoidoscopy, a comment was made about T.W. being potentially unable to breast feed her infant due to her recent unexplained weight loss. Petitioner responded, "Here, let me check." Petitioner then slid his hand under the sheet covering T.W. and palpated T.W.'s breast. Petitioner was questioned by CAMC's administrators about the touching. Petitioner acknowledged that he conducted brief vaginal examinations on P.W. and T.W. and

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

examined T.W.'s breast. Petitioner averred that each of these examinations was done for a medical purpose.

In 2018, Dr. Matulis was indicted on five counts of second-degree sexual assault and two counts of first-degree sexual abuse. All of the charges related to gastroenterological procedures performed by petitioner at CAMC. Prior to the trial in this matter, the circuit court dismissed Count Six, alleging sexual assault in the second degree, and Count Seven, alleging sexual abuse in the first degree, on the ground that no victim was named in either count. Petitioner also moved to present at trial the expert testimony of Dr. Yadira Baez-Lockard, a psychologist, whose proposed testimony/opinion would regard (1) the "criteria for abnormal and criminal sexual behavior," and (2) that petitioner "does not meet those criteria as defined in medical research and the Diagnostic and Statistical Manual, Fifth Edition." Petitioner argued that Dr. Lockard's opinion would help the jury determine if petitioner's touching of P.W. and T.W. was done for the purpose of obtaining sexual gratification. The circuit court commented on petitioner's motion, but did not rule upon it.

Petitioner's five-day trial began on October 1, 2018. That same day, the circuit court found that Dr. Yadira Baez-Lockard's testimony was inadmissible because it invaded the province of the jury, i.e., that based on the evidence at trial, the jury could determine whether petitioner touched the victims for the purpose of sexual gratification.

During the State's case-in-chief, it called Dr. Daniel Shats, a board certified gastroenterologist. Dr. Shats testified that a "digital vaginal exam" where "the fingers are used to examine the vagina" is not a standard procedure during the "usual procedures done by gastroenterologists" because "a gastroenterologist is a specialist in the digestive system" and a digital vaginal exam is "an examination of an entirely different bodily system, one which gastroenterologists typically don't receive any extensive training in." The State then asked Dr. Shats, "Generally are vaginal exams medically necessary in the scope of the practice of gastroenterology?" Dr. Shats replied, "Medically necessary, no, because there's always the option of referring the patient to a specialist in the female reproductive system, a gynecologist." However, Dr. Shats also testified that, while it was "not outside the realm of possibility" that a gastroenterologist might need to perform a digital vaginal exam, such examinations were not usually performed during a colonoscopy because "it's important that the patient participates in the examination" and, therefore, that procedure is "generally . . . performed on an awake patient." Dr. Shats also said that "if for some reason it [becomes] necessary to examine the vaginal area during a colonoscopy, I would mention that after to the patient." Dr. Shats also testified that a breast examination is not within the regular procedures of a gastroenterologist and that it would not be within the purview of a gastroenterologist to check the breast tissue of a breastfeeding patient. Finally, Dr. Shats opined that petitioner's touching of P.W.'s and T.W.'s vaginas and T.W.'s breast "was not medically necessary[,]" but if such examinations were conducted, petitioner should have documented them in the patients' medical records.

The State also called Dr. Larry Griffin, a board certified obstetrician-gynecologist ("OB-GYN"). Dr. Griffin testified that having reviewed P.W.'s and T.W.'s patient records, he could discern no medical reason for petitioner to conduct a digital vaginal examination of either woman. He further opined that petitioner's touching of T.W.'s breast was "not at all" medically warranted and that a colonoscopy was "certainly . . . not an appropriate setting for a breast examination."

2

Patient P.W. testified that petitioner did not inform her following her gastroenterological procedure that he touched her vagina or that she needed a vaginal examination. Likewise, T.W. testified that petitioner did not inform her following her gastroenterological procedure that he touched her vagina and her breast, or that she needed a vaginal or breast examination.

At the close of the State's case-in-chief, petitioner's counsel moved for a judgment of acquittal on the five remaining counts. The circuit court granted petitioner's motion with regard to Counts II and III of petitioner's indictment. Therefore, the three counts remaining for the jury were Count I (sexual assault in the second degree: sexual intrusion of P.W.'s vagina), Count IV (sexual assault in the second degree: sexual intrusion T.W.'s vagina), and Count V (sexual abuse in the first degree for touching of T.W.'s breast).

Petitioner did not testify during his case-in-chief; however, he did call a board certified gastroenterologist, Dr. Donald Seibert, who explained that digital vaginal examinations may be appropriate during a colonoscopy or sigmoidoscopy, and that he trained his medical fellows, including petitioner, to utilize that technique when necessary. Dr. Seibert then opined that petitioner's behavior with regard to the vaginal examinations was medically warranted and appropriate. However, with regard to petitioner's touching of T.W.'s breast, Dr. Seibert said, "I think [petitioner] wanted to help[;]he's trying to help the patient, but that doesn't help the patient."

On closing, petitioner's counsel said, "I'll be clear. [Petitioner] touched [T.W.'s] breast . . . . He also did a two-second vaginal exam . . . . Everything that he did was directly related to her symptoms, was directly related to her treatment, and was directly related to patient care."

During their deliberations, the jury sent a note to the circuit court seeking a definition of "sexual gratification." The court answered that question. Thereafter, the jury sent out another note indicating they were able to rule on only one of the three remaining counts. In response, the circuit court gave the jury an *Allen* charge pursuant to *Allen v. U.S.*, 164 U.S. 492 (1896). Thereafter, the jury found petitioner guilty of Count V, sexual abuse in the first degree, regarding his touching of T.W.'s breast. The jury acquitted him of Count I (sexual assault in the second degree: sexual intrusion of P.W.'s vagina) and Count IV (sexual assault in the second degree: sexual intrusion of T.W.'s vagina).

Post-trial, petitioner filed a motion for a judgment of acquittal, or, in the alternative, a motion for a new trial. By order entered November 8, 2018, the circuit court denied petitioner's motions and sentenced petitioner to not less than one nor more than five years in prison, and assessed a $10,000 fine. The circuit court also ordered that petitioner register as a sex offender and be placed on supervised release for five years following his release from prison. Petitioner now appeals.

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions

3

of law are subject to a *de novo* review." Syl. pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

*State v. Sites*, 241 W.Va. 430, 437, 825 S.E.2d 758, 765 (2019).

Petitioner asserts three assignments of error on appeal. Petitioner first argues that the circuit court's decision to prohibit Dr. Baez-Lockard's expert testimony was erroneous where that evidence was relevant in determining whether petitioner's touching of T.W.'s breast was done for the purpose of his own sexual gratification. Petitioner argues that Dr. Baez-Lockard's proposed testimony would have regarded (1) questions not within the common knowledge or experience of lay jurors and was therefore admissible under Rule of Evidence 702; and (2) was relevant and essential to his defense on a material element of the crimes charged.

The admissibility of expert testimony is governed by the West Virginia Rules of Evidence. *See* Syllabus Points 1, 2, and 3, *Wilt v. Buracker*, 191 W. Va. 39, 443 S.E.2d 196 (1993); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Rule 702 of the West Virginia Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." That said, "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk*, [171] W.Va. [639, 643], 301 S.E.2d 596, 599 (1983)." Syl. Pt. 2, *State v. Peyatt*, 173 W. Va. 317, 318, 315 S.E.2d 574, 575 (1983).

Here, the circuit court did not abuse its discretion when it excluded Dr. Baez-Lockard's expert testimony.

> In determining who is an expert, a circuit court should conduct a two-step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) *which will assist the trier of fact*. Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

Syl. Pt. 5, *Gentry v. Mangum*, 195 W. Va. 512, 515, 466 S.E.2d 171, 174 (1995) (emphasis added). With regard to the third issue, the helpfulness of the proffered expert testimony,

> Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise." *See*, *Sheely v. Pinion*, 200 W.Va. 472, 478, 490 S.E.2d 291, 297 (1997), stating that the essence of Rule 702 is that of assisting the fact finder's comprehension through expert testimony.

*Short v. Appalachian OH-9, Inc.*, 203 W. Va. 246, 253, 507 S.E.2d 124, 131 (1998). However, "'[e]xpert opinion evidence concerning a matter as to which the jury are as competent to form an

accurate opinion as the witness, is inadmissible." Syllabus Point 7, *Lawrence's Adm'r v. Hyde*, 77 W.Va. 639, 88 S.E. 45 (1916)." Syl. Pt. 2, *State v. Mitter*, 168 W. Va. 531, 532, 285 S.E.2d 376, 377 (1981).

With regard to Dr. Baez-Lockard's proffered testimony, the circuit court found that it was inadmissible because it would not assist the jury. Specifically, the circuit court said,

> The question that's before the jury is whether [petitioner's alleged] conduct took place and whether it was improper under the law. It's not whether he has the proclivity for that type of behavior or not. Those are issues that are within the knowledge and understanding of the jury, and their observations and skills that they possess. I don't believe this will assist the trier of fact in any regard, and I'm going to prohibit the use of [Dr. Baez-Lockard].

Clearly, the circuit court's decision did not turn on which party submitted the proffered testimony as petitioner claims. Nor did the circuit court err in precluding Dr. Baez-Lockard's testimony. To convict petitioner of the crimes charged, the State had to prove he touched the alleged victims for the purpose of his own sexual gratification. Petitioner admitted that he touched P.W.'s vagina and T.W.'s breast and vagina. Thus, the question was whether petitioner touched the victims for his own sexual gratification. A trial court may find that expert opinion testimony is not properly admitted for proving intent, not because that testimony goes to the ultimate issue, but because jurors are perfectly capable of discerning intent in the absence of expert evidence. *See Mitter*, 168 W. Va. at 536, 285 S.E.2d at 379. Here, the circuit court found that the jury could determine petitioner's intent from the evidence produced at trial. We concur and, therefore, find that the circuit court did not err in precluding Dr. Baez-Lockard's proffered testimony at petitioner's trial.

Petitioner's second assignment of error is that the circuit court erred when it allowed an OB-GYN to testify regarding the medical propriety of a gastroenterologist conducting breast and vaginal examinations on his patients. A central issue in this case was whether petitioner's touching of P.W. and T.W. was justified as a medical necessity. Dr. Griffin, an expert in obstetrics and gynecology, i.e., an expert in breast and vaginal examinations, testified that touching the breast of a medically-sedated patient undergoing a colonoscopy was "not at all" a medically-necessary or valid examination. Clearly, that information was relevant and helpful to the jury. *See Gentry* at syl. pt. 5. Moreover, "a physician does not have to be board certified in a specialty to qualify to render an expert opinion, [however,] the physician must have some experience or knowledge on which to base his or her opinion." *Farley v. Shook*, 218 W. Va. 680, 687, 629 S.E.2d 739, 746 (2006). Accordingly, we find that the circuit court did not abuse its discretion when it determined that Dr. Griffin's testimony regarding breast and vaginal examinations was admissible.

Petitioner's third and final assignment of error is that, even when the evidence is viewed in the light most favorable to the State, it failed to present proof beyond a reasonable doubt that petitioner had the necessary mental state to commit sexual abuse under West Virginia Code § 61-8B-7, i.e., that he touched T.W.'s breast for the purpose of gratifying the sexual desire of either party. *See* W. Va. Code § 61-8B-1(6).

As we have oft said,

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

In this case, there was no shortage of evidence that petitioner touched T.W.'s breast. With regard to the *reason* petitioner touched petitioner's breast, "a fact finder may infer the element of sexual gratification from the location of the touching, *i.e.*, breast and pubic area, and the absence of a medical reason for the touching." *Commonwealth v. Tyma*, 2013 WL 11246163, at *8 (Pa. Super. Ct. Dec. 18, 2013); *see also People v. Willis*, 79 A.D.3d 1739, 1740 (S. Ct. App. Div. N.Y. 2010) ("[T]he question of whether a person was seeking sexual gratification is generally a subjective inquiry, it can be inferred from the conduct of the perpetrator . . . ."); *Lapin v. State*, 981 A.2d 34, 45 (2009) ("[A] jury properly could infer that the touching of a girl's breasts was for the purpose of sexual gratification without specific proof that it was so motivated") (citing *Holloway v. State*, 849 S.W.2d 473, 476 (1993)); *State v. Meeks*, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993) ("We recognize that jurors may use their common knowledge and experience in making reasonable inferences from evidence . . . . [T]he jury could have drawn on common knowledge to reasonably infer that the defendant had grabbed [the victim's] breast for the . . . purpose of sexual gratification."). *See also State v. Keith A.*, No. 17-0262, 2018 WL 2175545, at *4 (W. Va. May 11, 2018) (memorandum decision) (where a witness testified that he saw the defendant groping the victim's buttocks, "the jury easily could have found that petitioner touched [the victim] in the manner that he did for his sexual gratification").

Having assessed the record in light of *Guthrie*, we find it contains sufficient evidence to sustain petitioner's conviction for sexual abuse in the first degree. Both of the State's experts (the gastroenterologist and the OB-GYN) opined that there was no medical reason for petitioner to touch T.W.'s breast, and petitioner's expert (a gastroenterologist) admitted that petitioner's touching of T.W.'s breast was not medically warranted. Accordingly, we reject petitioner's claim that the State failed to prove beyond a reasonable doubt that petitioner's touching of T.W.'s breast was for the purpose of gratifying his own sexual desire.

For the foregoing reasons, we affirm.

Affirmed.

6

**ISSUED:** March 23, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison